UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

PAMELA A. REYNOLDS                                                                         PLAINTIFF

V.                              No. 4:21-CV-369-BRW-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration[1]                                                          DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. Introduction

On September 5, 2018, Pamela A. Reynolds ("Reynolds") filed a Title II application for a period of disability and disability insurance benefits. (Tr. at 15). In the application, she alleged disability beginning on March 15, 2018. *Id*. In a written

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

decision dated July 30, 2020, an administrative law judge (ALJ) denied the application. (Tr. at 24–25). The Appeals Council denied Reynolds's request for review on March 2, 2021. (Tr. at 1–3). The ALJ's decision now stands as the final decision of the Commissioner, and Reynolds has requested judicial review.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II. The Commissioner's Decision

At step one of the required five-step analysis, the ALJ found that Reynolds had not engaged in substantial gainful activity since the alleged onset date of March 15, 2018.[2] (Tr. at 17). At Step Two, the ALJ determined that Reynolds has the following severe impairments: (1) hypertension; (2) degenerative disk disease; (3) chronic kidney disease; (4) diabetes mellitus; and (5) obesity. *Id*.

After finding that Reynolds's impairments did not meet or equal a listed impairment (Tr. at 18), the ALJ determined that she had the residual functional capacity (RFC) to perform the full range of work at the light exertional level, with no additional limitations. (Tr. at 18).

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

At Step Four, the ALJ found that Reynolds could perform her past relevant work as a cook helper. (Tr. at 24–25). Therefore, the ALJ found that Reynolds was not disabled from March 15, 2018, through the date of the ALJ's decision (July 30, 2020). *Id*.

### III.  Discussion

#### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'"

3

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "It means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    **B.   Reynolds's Arguments on Appeal**

Reynolds contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that the ALJ did not properly consider and analyze either the medical opinion evidence or Reynolds's subjective complaints.

The Court turns first to the ALJ's consideration of medical opinion evidence. On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant;[3] (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)–(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1–2) (2017). *See Phillips v. Saul*, No. 1:19-CV-34-BD, 2020 WL 3451519, at *2 (E.D. Ark. June

---

[3] This includes (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship.

24, 2020).[4] Overall, an ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

Vasili Lendel, M.D., a cardiologist, saw Reynolds several times in 2019 and 2020. At Reynolds's visits, she routinely denied dizziness, syncope, chest pain, and palpitations. (Tr. at 357, 376, 432, 437, 444–447, 648–658, 699, 779–786). She had mostly normal physical examinations during 2018, 2019, and 2020.[5] (Tr. at 21–22). Additionally, Dr. Lendel noted that Reynolds was working as an egg collector on a chicken farm as recently as March 2020.[6] (Tr. at 20–23, 936). And although Reynolds alleges that her hypertension was consistently elevated in spite of medication compliance, the record indicates that in May 2019, her "blood pressure readings were much better and showed improvement from her very high numbers earlier."[7] (Tr. at 21, 531–539, 834–842). At that time, Dr. Lendel planned to wean Reynolds off of her blood pressure medications. (Tr. at 839).

---

[4] ALJs are required to explain their decisions based on the two most important factors: supportability and consistency. 20 C.F.R. 404.1520(b)(2). These requirements are meant to provide individuals with a better understanding of the Commissioner's decision and provide sufficient rationale for a reviewing adjudicator or court. *Phillips, supra*; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at 5854, 5858 (January 18, 2017).

[5] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

[6] Working generally demonstrates an ability to perform a substantial gainful activity, and it is inconsistent with complaints of disabling pain. *Naber v. Shalala*, 22 F.3d 186, 188–89 (8th Cir. 1994).

[7] Improvement in condition supports an ALJ's finding that a claimant is not disabled. See *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

Although Reynolds was twice admitted to the hospital for chest pain, she improved during her stays and was stable upon discharge. (Tr. at 22). Moreover, Reynolds was encouraged to improve her diet and undertake a walking regimen; she admits this in her brief.[8] (Tr. at 571, 636–640, Doc. No. 12 at 22–23). Indeed, Reynolds said in May 2019 that she was walking 1–3 miles per day. (Tr. at 685). Furthermore, Reynolds said that she could do simple chores, attend to personal care, fix meals for herself and her husband, and shop in stores on a regular basis.[9] (Tr. at 219–226, 237–244). The ALJ noted in his decision that Reynolds had to rest during some of these activities and could not do them for as long as she used to. (Tr. at 20–21).

Dr. Lendel filled out two checkbox medical source statements, in April 2020 and May 2020, indicating that Reynolds could not even perform sedentary work. (Tr. at 898–901, 921–924). The ALJ properly discounted these opinions, finding them to be not persuasive because they were inconsistent with Reynolds's denial of cardiac symptoms and her ability to work during the relevant time-period. (Tr. at 22–23). He also said the opinions were not supported by the results of physical examinations. *Id*. The ALJ properly evaluated these two opinions; the record

---

[8] *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (encouragement to exercise constituted evidence in support of ALJ's findings).

[9] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).


supported his conclusion that Reynolds did not have limitations as extreme as Dr. Lendel suggested.

Randall Osborn, APN, and Karl Sandberg, M.D., who occasionally treated Reynolds, completed two checkbox medical source statements as well.[10] (Tr. at 516, 808–811). Like Dr. Lendel, they opined that Reynolds would not be able to perform even sedentary work. *Id*. Mr. Osborn also said that Reynolds would be off task 5% of the time and absent more than 4 days per month. *Id*. Again, the ALJ properly discounted these opinions, finding them inconsistent and unsupported by grossly normal examination findings and Reynolds's ability to perform work as an egg collector. (Tr. at 23). The ALJ fulfilled his duty with respect to evaluation of medical opinions.[11]

Likewise, the ALJ fulfilled the duty to consider a number of factors when assessing Reynolds's subjective complaints. In short, Reynolds alleged, at the

---

[10] A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

[11] Two Disability Determination Services medical experts reviewed the record and found Reynolds capable of medium exertional work. (Tr. at 22). The ALJ found these opinions to be unpersuasive, because the record showed that Reynolds was more limited, and would not be able to perform work at the medium level. *Id*. Reynolds points out correctly that the ALJ found all of the medical opinions to be not persuasive, which, she argues, left him with no support for his RFC determination. (Doc. No. 12 at 18). However, there is no requirement that an RFC finding be supported by a specific medical opinion. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (affirming RFC without medical opinion evidence).

hearing, that due to her multiple diagnoses and the symptoms associated therewith, she could not work.

When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

The ALJ discussed Reynolds's complaints of pain, her positive response to medication, her daily activities, and her ability to work during most of the relevant time-period. (Tr. at 19–24). Multiple providers encouraged exercise and diet modifications. *Id*. Based upon these factors, the ALJ properly found that Reynolds's subjective complaints were not entirely consistent with the record as a whole. (Tr. at 20–21).

## IV. Conclusion

There is substantial evidence to support the Commissioner's decision that Reynolds was not disabled. The ALJ properly considered the medical opinions and Reynolds's subjective complaints.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered for the Defendant.

DATED this 23rd day of May, 2022.

_____
UNITED STATES MAGISTRATE JUDGE